The next matter on our calendar is CMGRP v. Agency for the Performing Arts. You may proceed. Thank you, Your Honor. Rob Rigrish for the appellants, Agency for the Performing Arts, Maggie Gallant, Sheila Munguia, and Jenna Hudson. The trial court aired when it awarded more than $85,000 in attorney's fees against my clients to the appellee, CMGRP, who was the individual appellant's former employer when it granted CMGRP's motion to remand the case back to the New York County Supreme Court. This case arises generally from CMGRP's attempts to enforce post-employment restrictive covenants against the three individuals. Our situation is the opposite of what Martin v. Franklin Capital, the Supreme Court's decision from 2005, tells us is the large objective of 1447C, which is the desire to deter removal sought for the purpose of prolonging litigation and imposing costs on the opposing party. Here it was CMGRP, not my clients, that sought to prolong the litigation and impose costs. Second, removal was objectively reasonable under the Martin v. Franklin Capital standard when we filed the removal petition because clearly established law did not foreclose the basis for removal. This is the test that was adopted by this court in Williams v. International Gunorama, citing a Seventh Circuit case, Lott, which followed Martin v. Franklin Capital. Third, we reserved our objections by bringing to the court's attention below Martin v. Franklin Capital, the governing legal standard, when CMGRP had not noted that when they filed  It's those three points that are really significant for our purposes. The factual situation we have here is completely different than what you'll normally see. Only the assessment of Terry's case is reviewable, right? That's correct, Your Honor, and we did not... The remand decision is not reviewable. It's not, and we did not appeal it. We made it clear that was the case. So what is our standard of review? Our standard of review is abuse of discretion? It is abuse of discretion, Your Honor, yes. The abuse of discretion is in awarding fees after a remand decision? It's awarding fees under 1447C coincident to the remand decision. It's the standard to decide, the standard that the district court should have recognized for deciding to award attorney's fees as well. It's the standard stated in Martin v. Franklin Capital, which again goes to the discretion of the court, but that discretion has to be guided by proper legal principles, which is the point made in Martin v. Franklin Capital. And here there were two errors. How do you... which is that there was no objectively reasonable basis upon which you could have removed the case to federal court? There are really two parts to it. I mean, how do we... doesn't that then in essence require us to determine whether the initial remand was appropriate? Not at all, Your Honor. Not at all? Not at all. There are two separate issues, we believe. Okay. And there are two points that the trial court erred in making. First was the legal question of what's the pleading standard in the New York courts. And in that situation, because of the way they pled their case against the nondiverse defendant, Mungia, they were legally conclusory allegations in group pleadings. They said she acted in concert on information and belief. That's all they could offer up. The second part of the error, and the court did not, we believe, apply that standard properly in looking at the pleading, the second was that where there were facts before the court, the court disregarded them. Because when CMGRP moved to remand the case, they offered into evidence some redacted electronic mail messages from their records. And those redacted electronic mail messages were just offered by counsel. No witness to explain them. They involved communications along two of our clients, Ms. Gallant and Ms. Mungia. They explained it, and it's in the record. They explained what those e-mails related to. And what they really demonstrated is that they were continuing to work for the benefit of CMGRP throughout the term of their employment until they left. And the court below did not address that specifically or recognize it. But what the court did do below was say the complaint did allege specific facts, and it didn't. It stated the legal conclusions in group allegations. On one of the claims that were made, it's particularly telling, and that's on the breach of duty of loyalty claim against Ms. Mungia. But we don't look at the affidavits on a motion to dismiss. We only look at the pleadings. Well, on this point, and this is something that's been addressed in two other circuits in particular. One is the Valdez v. Walmart case, which was cited favorably by the Supreme Court and Martin v. Franklin Capital. And the second is a case in the Knight circuit we cited, which is Gardner. Yes, how the evidence got before the court is in the context of that remand motion, trying to put meat on the bones of what the complaint alleged. And CMGRP tried to do that with these e-mails. But the meat they put on the bones establishes our defense because it showed that Ms. Mungia and Ms. Gallant, Ms. Mungiu in particular for this case, were acting in the best interest of their employer, CMGRP, through the last day they worked there. So it is evidence that the court could and should have considered. And when it failed to do so, that was clearly erroneous since what that showed was that it wasn't there. But still, don't you need clear and convincing evidence that CMGRP had no possibility of stating a claim against Ms. Mungia? And I don't see how you meet that standard. It's a very strict standard we have for pleading fraudulent joinder. And here with the departures occurring roughly in the same time frame and them having prior working relationships and being bound by similar either codes of conduct or legal standards with regard to no future competition, I find it difficult to understand how you can say that there was no possibility of stating a claim against Ms. Mungia. Maybe you could help me out. Yeah, that's the legal standard that the district court could consider in making the remand decision. That's distinct from the standard this court should apply under Martin v. Franklin Capital to assess the question of whether we had an objectively reasonable basis at the time for a moving. Well, exactly. Whether there was an objectively reasonable basis has to be considered in the context of the very strict standard that you have to meet. It goes to the question of the language in the complaint. Again, it goes to the pleading standard under New York law, not the question of whether the district court should have remanded the case. We're not challenging the remand decision, which is the standard I believe Your Honor is citing to. We're challenging the award of fees on the question of whether we were objectively reasonable based on the complaint that was made in removing the case. But whether you were objectively reasonable or not depends upon whether you could make a plausible argument that the jointer happened fraudulently, and I'm suggesting that that's a very difficult standard to meet. And it's our position, Your Honor, that that's the remand standard, which again is not challengeable on appeal. It's not the standard for objective reasonableness under Martin v. Franklin Capital, which goes to a separate question, which is whether or not the court should, in its exercise of discretion, award attorneys' fees, in this case over $85,000 on a remand motion. I believe my time is up, Your Honor. Yes, you've reserved a couple of minutes for rebuttal. Do you have a question? No, I'm good. We'll hear from opposing counsel. May it please the court. Good morning, Your Honor. I'm Robert Whitman on behalf of the Plaintiff Appellee, CMGRP. Judge Schofield held in her decision in this case that based on the allegations in the complaint and long established second circuit in New York law, that the defendants had no objectively reasonable basis to support their fraudulent joitor argument, and therefore an award of fees was appropriate. The issue before this court is, was that an abuse of discretion? This court held in the Calabro case, also a remand decision involving attorney's fees, that a district court has abused its discretion if it based its ruling on an erroneous view of the law, or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions. And we submit there is no possible basis on this record for this court to reach a conclusion that the district court abused its discretion under that standard. This court held, in terms of the standard for fraudulent joinder, it held it in the Pampelonia case. It later reaffirmed it in the Briar Patch case, that fraudulent joinder occurs when there has been outright fraud committed in the plaintiff's pleadings. Where there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant bears a heavy burden to show this, must do so by clear and convincing evidence, and all factual and legal issues must be resolved in favor of the plaintiff. Can I stop you for a second? So that's the standard to determine whether you were wrong with regard to adding the New York resident as a defendant, which then precluded diversity of jurisdiction. Correct. And would keep you in state court. Correct. And then I take it what we do is we look at whether your opponent could objectively, reasonably believe that they could remove, in light of what the standard was for which you could add a non-diverse defendant, and whether they could then, notwithstanding that, remove the matter to federal district court. That's correct, Your Honor. Essentially, boiled down. It really does. One has to employ the first to get to understand what you're measuring is objectively reasonable for the second. That is correct. There is certainly an interplay with the merits of the remand decision in this analysis. We don't dispute that. Frankly, you're back in state supreme, right? You're in state court. I mean, technically, the action, the remand has not been appealed. It can't be appealed. Correct. So you're technically, you're in state court. You're only here on the issue of attorney's fees. That's correct. And whatever happens in state court now happens forever because the remand's not appealable. Yes. And so, therefore, that order's gone. You'll never be back to the Second Circuit on the propriety of the remand. That is correct. That is correct. But the ultimate issue, Your Honor, to boil it down is, did the defendants have any objectively reasonable basis to believe that. You had fraudulently joined the New York resident defendant. To defeat diversity. Correct. Correct. And on this record, given the very, very high standard to show fraudulent joinder, there's no. It is different than just what is required to plead a case against her under New York law. That's absolutely correct. And it is different, as Judge Schofield recognized and the case law makes clear, it is different from the Twombly-Iqbal Rule 12b6 standard that we employ in federal court. It is a looser CPLR standard with respect to the sufficiency of the pleading. And if even one count of a state court complaint could be sustained, then the defendant's inclusion was proper. If there is any possibility of a recovery, that militates against a finding of fraudulently joined. So your opponent argues that the allegations of the complaint are unacceptably conclusory. And in particular, that they group together Gallant, McGuire, and Hudson in concert with other CMGRP employees. And just makes general allegations about them. Doesn't describe any particular instances of soliciting clients of their former employer. And violates New York pleading standards, even given that they are more relaxed than Iqbal and Twombly. What's your response to that? So with respect to the group pleading, or the group allegation argument, that's simply not accurate. There are specific allegations in the complaint, and we detail them with specific paragraph numbers of the complaint in our submissions, that indicate what specifically Ms. McGuire did, what her role was. Yes, she did act in concert with others. That is essentially the theory that we've advanced in the case. That she, along with her colleagues, engineered a mass exit and a solicitation. But it is not simply a case of saying one person did it, and therefore everybody else did it too, and they're all guilty. It was not just simply naming like a corporate entity, two layers removed, simply throwing it in as an additional defendant without any specific acts by that entity. Well, actually, so I see count three focuses on her and makes a breach of contract claim. But if you could direct us to a particular allegation about Ms. McGuire herself, taking an action that was in violation of the code of conduct or otherwise unlawful, that would be helpful. There are allegations in the complaint, paragraph 17 and 32 in the complaint, that talk about Ms. McGuire and her work background and her reporting to Ms. Gallant, a co-defendant who is the head of that unit. Those are just descriptive of her. I'm looking for something that she did that was wrong that's alleged with specificity. That is paragraphs 51 and 53 of the complaint when Ms. Gallant announced her resignation. Ms. McGuire did the same a few days later. That both of them are now, were now at, they are today, but at the time of the complaint as well. I'm just announcing, that's just the narrative that she resigned. Where's there an allegation about some wrong doing that she did? And that since she resigned, since Ms. McGuire resigned, nearly all of the key employees of that particular business unit, and a number of valuable client relationships had been transferred to APA. That is alleged specifically in the complaint. That many of the former employees who were part of this group who worked in this unit had made evasive statements to the business unit, which was called Rogers and Cowan, a unit of CMGRP, regarding their future employment and what their possibilities were. And more generally, that the circumstances of those departures lead to the conclusion that they had violated various obligations. One of those obligations being an obligation not to solicit other employees to leave the employ of CMGRP. There were allegations concerning unfair competition, allegations concerning confidential information. So it's not just limited to a specific client. It's not just limited to a specific breach of contract. It is in the context of a larger group departure of which Ms. McGuire was a critical member. Counsel, could you speak about the relevance of Section 1447C? You are seeking fees even for this appeal, are you not? That is correct, Your Honor. And this doesn't involve an order to remand this appeal, does it? This appeal involves an appeal of—we are here in defense of the district court's award of fees under 1447C. Right. We have cited to this court a number of decisions in which this court has held that where there is a fee-shifting provision that was invoked because of success at the trial court level, that fees are then awarded at the appellate level for a successful defense of that. We have cited the Jamico Enterprises case, Quarantino from 1999, this court most recently in the Keshen case. Section 1447C is limited by its terms to an order remanding the case. So that was legitimate on the action below, but this appeal is not about an order remanding the case, is it? That is correct, Your Honor. It's a technical matter, however— Technical is what we live on. No, I understand. But I'm simply saying that because the district court awarded fees in order to effectuate the purposes of 1447C and preclude multiplying proceedings with an unreasonable removal and can award fees in that situation, we submit it as appropriate under the precedence we've cited for this court to award fees for the defense of that award from the district court. And if the court would look at those decisions that we've cited, this court did not hesitate in finding, without citing specific statutory authority, but did not hesitate in finding that because fees were awarded below for a successful outcome in a case and that outcome was then defended successfully on appeal before this court, that it was appropriate to award fees for the appellate defense as well. So we submit that that same reasoning should apply here. Thank you. Thank you. Mr. Rickeris, you've reserved two minutes for rebuttal. Thank you, Your Honor. Looking to the complaint itself, we see that at complaints paragraph 2 and 62, which are in the appendix at A17 and A28, the allegations against Ms. Mungia are that on information and belief, a concerted plan. This is a deficient group pleading. We cited to the Abdale case a recent decision that explains how the New York courts deal with breaches of fiduciary duty, of which the duty of loyalty claim is one. In that situation, it's like pleading fraud. You've got to allege specificity. There's no specificity alleged in this complaint. That's why, under the standard in Martin v. Franklin Capital, we had objectively reasonable basis for removing this case to federal court. Now, subsequent development suggests we maybe didn't have to, but we didn't know that at the time in April of 2016. What's happened since — Clarkson, you've gotten a delay, haven't you, in state court? Oh, it was stayed and dismissed, and they're now pursuing the claims in Georgia, and the claims against Gallant based on the restrictive covenants have been lost. We've got pending in Georgia a motion both to dismiss or for summary judgment the claims against Ms. Mungia under New York law, under the BDO Sideman standard, which I believe Judge Wesley said on the panel a few years ago, and under the duty of loyalty test, which establishes what you have to do to have a breach of a duty of loyalty. Someone can prepare to go to move on, and it's not a violation of the breach of loyalty. And when we presented that to CMGRP in Georgia, their response was, we need Rule 56F discovery from you to determine what we should have in our information. And I would cite to one case that we did not cite below, which is the Paddington Partners case, which talks about 56F and it not being a vehicle for fishing expeditions, which is really where we are now. This case, we had objectively reasonable basis for moving this case based on the broad, nonspecific allegations made against the nondiverse defendant. And in that situation, under the guidance of Martin v. Franklin Capital, which rejected the principle that if you get a remand, it's presumptive that you'll get attorney's fees. They rejected that position, which was the Seventh Circuit's position before Martin, and accepted the Fifth Circuit position, which is you've got to look at the objectively reasonableness of the facts of the situation at the time, including the allegations of the complaint. And on that basis, we should prevail, and we ask the Court to reverse. I realize you're at Liza. Is there a difference between fraudulently joining someone and not being able to make out a claim, plead a full claim against them? The first step in looking at fraudulent joinder is to look at the complaint allegations under the law. Do you agree that there would have to be more than just that? In order to prevent a remand, I agree, Your Honor, but not for purposes of getting attorney's fees under the standard set forth by the Supreme Court and Martin v. Franklin Capital. Thank you, Your Honor. Thank you both. We'll reserve decision. The last case on our calendar is on submission, but we're going to adjourn to hear the fourth case on our calendar to the courtroom on Floor 15. It will be a closed courtroom, so only people who have clearance can join us in the courtroom. We'll take 10 minutes to do that. Thank you.